



1:24-cr-00258
Judge Elaine E. Bucklo
Magistrate Judge Sheila M. Finnegan
RANDOM/CAT. 5

KSR

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| SHIRLEY J. ANDERSON | ) | Code, Sections 152 (1) and (3), 157 |
| | ) | (1) and (2), and 641 |

## COUNT ONE

The SPECIAL NOVEMBER  2023 GRAND JURY charges:

1.      At times material to this Indictment:

### Relevant Individuals and Accounts

a.      Defendant SHIRLEY J. ANDERSON was the domestic partner of Coschemer A and, from in and around 2004 through at least in and around 2020, cohabited with Coschemer A on the 300 block of Four Winds Way, Carpentersville, Illinois (the Four Winds residence), and later at 3150 Whirlaway Lane, Montgomery, Illinois (the Whirlaway residence).

b.      ANDERSON was the sole account holder of JPMorgan Chase Bank (Chase) account #6879 and a joint account holder of Chase account #7244 with Coschemer A, and of Chase account #7122 with her son.

### The Guardianship

c.      On or about August 17, 2011, ANDERSON's uncle, C.H.G., died as the result of an accident while working for AT&T. C.H.G. had assets, including as a result of his employment: a life insurance policy, pension, and 401k account administered by Fidelity Investments and by AT&T, social security survivors and workers compensation benefits. Victim A, who was then a minor, was the sole beneficiary and sole heir of C.H.G.

d.      On or about August 25, 2011, the Circuit Court of Kane County appointed ANDERSON as the plenary guardian of Victim A.

<u>The Section 8 Housing Assistance Program</u>

e.      United States Department of Housing and Urban Development ("HUD") funded the Housing Choice Voucher ("HCV") Program, which was also referred to as the Section 8 Housing Assistance Program, to assist eligible families in obtaining housing.   HCV benefits included Housing Assistance Payments for rent and utilities.

f.      The HCV Program was administered by public housing agencies to which HUD provided federal housing assistance funds.  The HCV program for Kendall County, in which Montgomery was located, was administered on behalf of HUD by the Kendall Housing Authority.

g.      To participate in the HCV Program, individuals and families were required to comply with certain HCV Program restrictions. A written lease was required. Applicants were prohibited from receiving housing assistance payments for a rental unit in which the applicant had an ownership interest. Owners/lessors of the rental unit were required to submit documentation, including an Economic Disclosure Statement, stating that they were the legal owner of the rental unit and that the applicant/tenant did not have an ownership interest in the rental unit.

h.      The HCV Program required an applicant to disclose personal and financial information of both the applicant and of the applicant's household members, which were material both to whether the applicant was approved to participate in the HCV Program

2

and, if so, the amount of the Housing Assistance Payment. In particular, applicants were required to submit sworn statements, including a sworn Personal Declaration, disclosing, among other things, the household members who would be living in the rental unit and the applicant's and the household members' income and assets. Among the assets that were required to be disclosed were the ownership of real estate by the applicant and any members of the applicant's household, and the applicant's bank accounts and balances.

i.      Once approved, participants were required to annually, and as changes occurred, disclose personal and financial information, including by resubmitting a sworn Personal Declaration, in order to continue to receive Housing Assistance Payments. This information was material to both the participant's continued eligibility to participate in the HCV Program and the amount of the Housing Assistance Payment.

j.      The rental unit owner was required to enter into a Housing Assistance Payments Contract which, among other things, limited the household members who would be residing at the rental unit and required the HCV Program's consent to add household members. Under the Housing Assistance Payments Contract, the HCV Program paid Housing Assistance Payments to the owner for the benefit of the participant by directly depositing the Housing Assistance Payment into the bank account specified by the owner.

The *Estate of C. H. G.*

k.      On or about April 26, 2018, Victim A was appointed as independent executor of the *Estate of C. H. G.* (2018 P 002320), a court action pending in the Circuit Court of Cook County.

l.      On or about January 25, 2019, the Circuit Court of Cook County granted Victim A's petition for leave to issue Citations to Discover Assets and Information on ANDERSON, Chase Bank, Fidelity Investments, and AT&T.

m.      On or about March 14, 2019, ANDERSON appeared *pro se* in the Circuit Court of Cook County at a status hearing on the *Estate of C. H. G.* (2018 P 002320), having been served with a Citation to Discover Assets and Information commanding her to appear in court and produce documents and communications relating to C.H.G., including accounts, pension plans, life insurance policies and the establishment of any accounts at Chase Bank to receive funds or other benefits intended for heirs or beneficiaries of C.H.G. The Circuit Court of Cook County continued the matter until April 26, 2019, in order to provide ANDERSON with time in which to decide whether to obtain an attorney.

n.      On or about April 26, 2019, ANDERSON appeared *pro se* in the Circuit Court of Cook County at a status hearing on the *Estate of C. H. G.* (2018 P 002320) and, after informing the Circuit Court that she intended to represent herself, was ordered to respond to the Citation to Discover Assets and Information, including the production of responsive documents, by May 24, 2019. The Circuit Court of Cook County continued the Citations to ANDERSON, Chase Bank, Fidelity Investments and AT&T until June 25, 2019.

<u>Bankruptcy</u>

o.      The filing of a bankruptcy petition automatically stayed collection activity by creditors against the debtor.

4

       p.      The filing of a bankruptcy petition by a debtor created a bankruptcy estate that included all legal or equitable interests of the debtor in property as of the commencement of the case.

       q.      Upon the filing of a Chapter 7 bankruptcy, a Chapter 7 Trustee was selected from a panel of trustees who had been appointed by the United States Trustee to administer the debtor's bankruptcy estate for the benefit of the debtor's creditors.

       r.      A debtor was required to file under penalty of perjury Schedules in which the debtor was required to disclose her current financial circumstances, including as follows:

       i.   Schedule A/B required the debtor to disclose whether she owned or had any legal or equitable interest in any residence and had any deposits of money and financial accounts;

       ii.   Schedule E/F required the debtor to disclose unsecured creditors; and

       iii.   Schedule I required the debtor to disclose income including contributions to her household expenses.

       s.      A debtor was required to file under penalty of perjury a Statement of Financial Affairs in which the debtor was required to disclose her financial history, including as follows:

       i.   Income from employment or any other source in the year of filing and for the immediate two prior calendar years; and

       ii.   Any lawsuits, court actions or administrative proceedings within a year of filing.

       t.      The information provided in Schedules and the Statement of Financial Affairs was material to determinations by the Chapter 7 Trustee and creditors of what constituted

property of the debtor's bankruptcy estate and whether they should object to the discharge of her debts or move to dismiss the bankruptcy case.

       u.      A debtor was required to appear at a First Meeting of Creditors and to testify under oath concerning her financial affairs.

       v.      A Chapter 7 debtor was automatically granted a discharge of her personal responsibility for her debts, including unlisted debts of unlisted creditors, as early as 60 days after the first date set for the first Meeting of Creditors, unless the bankruptcy court ordered otherwise.

       2.      Beginning in and around September 2011, and continuing until in and around February 2020, at Carpentersville, Montgomery and Chicago, and elsewhere in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, along with Coschemer A, devised and intended to devise a scheme to defraud and for the purpose of executing and concealing the scheme and attempting to do so, defendant filed and caused to be filed a petition in a bankruptcy case under Title 11.

       3.      It was part of the scheme that ANDERSON made materially false statements for purposes of:

       a.      fraudulently obtaining approximately $797,563 from the Estate of C. H G. (the C.H.G. Estate) and concealing that defendant had fraudulently obtained and converted money from the C.H.G. Estate;

       b.      fraudulently obtaining approximately $86,677 in Housing Assistance Payments and concealing that defendant was fraudulently obtaining Housing Assistance Payments;

       c.      using money fraudulently obtained and converted from the C.H.G. Estate and fraudulently obtained Housing Assistance Payments to purchase and make mortgage loan and tax escrow payments on the Whirlaway residence;

    d.    fraudulently concealing defendant's ownership interest in the Whirlaway residence; and

    e.    fraudulently preventing Victim A from recovering from defendant money that defendant had fraudulently obtained and converted from the C.H.G. Estate.

4.    It was further part of the scheme that ANDERSON attempted to and did defraud her creditors, including Victim A, and the Chapter 7 Trustee appointed to administer defendant's bankruptcy case (the Chapter 7 Trustee) by making false statements designed and intended to conceal the scheme, to conceal ANDERSON's actual financial circumstances, including her assets, and to fraudulently prevent creditors and the Chapter 7 Trustee from determining whether they should object to the discharge of ANDERSON debts or move to dismiss defendant's bankruptcy case.

<u>ANDERSON Converts Funds From the C.H.G. Estate</u>

5.    It was further part of the scheme that, on or about September 12, 2011, without the knowledge of Victim A, ANDERSON opened Chase account #3644 in the name of Victim A with ANDERSON as the representative payee.

6.    It was further part of the scheme that, in and around September 2011, ANDERSON, without the knowledge of Victim A and by pretending to be acting on behalf of the C.H.G. Estate and Victim A, began fraudulently obtaining and converting funds from the C.H.G. Estate which were the proceeds of accounts of Victim A's father, including life insurance, pension, and 401K accounts administered by Fidelity Investments and by AT&T, and the proceeds of settlements of claims, including worker's compensation amd social security claims against AT&T, made based on the death of Victim A's father.

7.      It was further part of the scheme that ANDERSON caused funds that she fraudulently obtained and converted from the C.H.G. Estate to be deposited into Chase account #3644. ANDERSON then used these funds for ANDERSON's and Coschemer A's benefit either by directly accessing the converted funds from Chase account #3644 or by first transferring the funds to Chase accounts # 6879, #7122, and #7244.

8.      It was further part of the scheme that, in and around 2011, ANDERSON fraudulently obtained and converted a total of approximately $77,840 from the C.H.G. Estate.

9.      It was further part of the scheme that, in and around 2012, ANDERSON fraudulently obtained and converted a total of approximately $305,108 from the C.H.G. Estate.

10.     It was further part of the scheme that, in and around 2011 and 2012, ANDERSON fraudulently obtained Housing Assistance Payments to subsidize her rent of the Four Winds Way residence by intentionally omitting to disclose Coschemer A's membership in her household and her income from fraudulently obtaining and converting money from the C.H.G. Estate in 2011 and 2012.

ANDERSON Uses Funds From the C.H.G. Estate
to Purchase the Whirlaway Residence

11.     It was further part of the scheme that, from in and around December 2011 through in and around October 2012, ANDERSON used at least approximately $27,122 that ANDERSON had fraudulently obtained and converted from the C.H.G. Estate to purchase the Whirlaway residence.

12.     It was further part of the scheme that on or about December 31, 2011, ANDERSON used funds from the C.H.G. Estate in Chase account #6879 to purchase a cashier's check in the

8

amount of approximately $1,500, payable to the builder of the Whirlaway residence with defendant as the remitter. ANDERSON then caused this $1,500 cashier's check to be provided to the builder as a payment on the lot on which the Whirlaway residence was built, as well as providing a "gift letter" for Coschemer A's use in obtaining financing to purchase the Whirlaway residence.

13.     It was further part of the scheme that, on or about January 24, 2012, ANDERSON gave Coschemer A a "gift" of approximately $25,000 in funds from the C.H.G. Estate, along with another "gift letter," for use in purchasing the Whirlaway Residence and caused the $25,000 to be deposited into Chase account #7244.

14.     It was further part of the scheme that, on or about January 29, 2012, ANDERSON wrote a check on Chase account #7244 in the amount of approximately $6,500 payable to the builder of the Whirlaway residence as "Earnest Money" and caused the $6,500 earnest money check to be provided to the builder of the Whirlaway residence.

15.     It was further part of the scheme that, on or about October 15, 2012, ANDERSON and Coschemer A purchased the Whirlaway residence by using a cashier's check in the amount of approximately $19,122 with Coschemer A as the remitter that ANDERSON caused to be purchased with funds from the C.H.G. Estate. ANDERSON and Coschemer A funded the remainder of the $252,300 purchase price through a mortgage loan with Coschemer A as the borrower.

16.     It was further part of the scheme that, on or about October 15, 2012, ANDERSON and Coschemer A purchased the Whirlaway residence in Coschemer A's name only for purposes of concealing ANDERSON's ownership and interest in the Whirlaway residence.

17.     It was further part of the scheme that, beginning in and around November 2012, as ANDERSON continued to share with Coschemer A funds that ANDERSON had converted from the C.H.G. Estate, Coschemer A used funds from the C.H.G. Estate to make payments on the Whirlaway residence mortgage loan and or was able to use Coschemer A's funds to make payments on the Whirlaway residence mortgage loan because of ANDERSON's and Coschemer A's use of funds from the C.H.G. Estate for other joint purposes.

ANDERSON  Fraudulently Obtains Housing Assistance Payments

18.     It was further part of the scheme that, in and around 2013, ANDERSON fraudulently obtained and converted a total of approximately $213,529 from the C.H.G. Estate.

19.     It was further part of the scheme that ANDERSON fraudulently applied to participate in the HCV Program as a tenant at the Whirlaway residence. In doing so, ANDERSON and Coschemer A fraudulently used that they had caused the Whirlaway residence to be titled in Coschemer A's name only to falsely represent that ANDERSON was renting the Whirlaway residence from Coschemer A.

20.      It was further a part of the scheme that, on or about July 18, 2013, ANDERSON and Coschemer A caused to be provided to the Kendall Housing Authority a fraudulent document purporting to be a lease of the Whirlaway residence, which falsely represented that Coschemer A was lessor and ANDERSON was lessee at a monthly rent of $1,550, when ANDERSON and Coschemer A well knew that ANDERSON was the domestic partner of and had cohabitated with Coschemer A since approximately 2004, that they shared living expenses, and that ANDERSON did not pay rent to Coschemer A.

21.     It was further part of the scheme that, on or about July 18, 2013, Coschemer A provided to the Kendall Housing Authority an Economic Disclosure Statement in which Coschemer A falsely represented that ANDERSON was "not an owner, partner or beneficiary to . . . [the Whirlaway residence]" when Coschemer A well knew that ANDERSON had provided all of the approximately $27,122 used to purchase the Whirlaway residence, that ANDERSON had provided and was providing a portion of the funds Coschemer A's used to make payments on the Whirlaway residence mortgage loan, and thus that ANDERSON had an ownership interest in the Whirlaway residence.

22.     It was further part of the scheme that, on or about August 1, 2013, ANDERSON submitted to the Kendall Housing Authority a sworn Personal Declaration in which ANDERSON made false representations, including:

      a.    Providing a list of the members of her household who would be living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A would reside at the Whirlaway residence with her;

      b.    That neither she nor any member of her household who would be living at the Whirlaway residence "own or have an interest in any real estate," when ANDERSON well knew that both ANDERSON and Coschemer A owned and had an interest in the Whirlaway residence;

      c.    That she then had no income, when ANDERSON well knew that she had income in June and July of 2013, in the amount of approximately, $68,637 and $23,618, respectively, from fraudulently obtaining and converting funds from the C.H.G. Estate;  and

      d.    That she had no bank accounts and no funds on deposit when ANDERSON well knew that she had four bank accounts, namely Chase accounts #3644, #7244, #7122, and #6879, that, in and about the months of July and August 2013, had aggregate beginning and ending balances of between approximately $41,075 and approximately $6,139, respectively; and that

she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate.

23.     It was further part of the scheme that, on or about September 11, 2013, Coschmer A entered into a Housing Assistance Payment Contract with the Kendall Housing Authority, in which Coschemer A falsely represented that he was not residing at the Whirlaway residence.

24.     It was further part of the scheme that, in and around September 2013, Coschemer A caused the Kendall Housing Authority to directly deposit housing assistance payments into Chase Account #7244, an account which Coschemer A jointly held with ANDERSON.

25.     It was further part of the scheme that in and around 2013, ANDERSON and Coschemer A fraudulently obtained approximately $7,161 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

26.     It was further part of the scheme that in and around 2014, ANDERSON fraudulently obtained and converted approximately $50,682 from the C.H.G. Estate and ANDERSON and Coschemer A fraudulently obtained approximately $16,837 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

27.     It was further part of the scheme that, in and around May 2014, ANDERSON made false representations to the Kendall Housing Authority, including:

a.     Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

b.     That she had no assets, when ANDERSON well knew that she owned and had an interest in the Whirlaway residence; that she had four bank accounts, namely Chase accounts #3644, #7244, #7122, and #6879, that, in and about the months of May and June 2014, had aggregate beginning and ending balances of between approximately $4,175 and approximately $565, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate; and

c.     That she then had no income other than financial aid, when ANDERSON well knew that she had income in April and May of 2014, in the amount of approximately $5,427 and $3,618, respectively, from fraudulently obtaining and converting funds from the C.H.G. Estate.

28.    It was further part of the scheme that in and around 2015, ANDERSON fraudulently obtained and converted approximately $54,898 from the C.H.G. Estate and ANDERSON and Coschemer A fraudulently obtained approximately $14,838 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

29.    It was further part of the scheme that, in and around June 2015, ANDERSON made false representations to the Kendall Housing Authority, including:

a.     Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

b.     That she had no assets, when ANDERSON well knew that she owned and had an interest in the Whirlaway residence; that she had four bank accounts, namely Chase accounts #3644, #7244, #7122, and #6879, that, in and about

the months of May and June 2015, had aggregate beginning and ending balances of between approximately $345 and approximately $1,746, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate; and

    c.    That she then had no income other than financial aid, when ANDERSON well knew that she had income in May and June of 2015, in the amount of approximately $3,618 and $3,618, respectively, from fraudulently obtaining and converting funds from the C.H.G. Estate.

30.    It was further part of the scheme that in and around 2016, ANDERSON fraudulently obtained and converted approximately $48,720 from the C.H.G. Estate and ANDERSON and Coschemer A fraudulently obtained approximately $15,566 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

31.    It was further part of the scheme that, in and around July 2016, ANDERSON made false representations to the Kendall Housing Authority, including:

    a.    Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

    b.    That she had no assets, when ANDERSON well knew that she owned and had an interest in the Whirlaway residence; that she had four bank accounts, namely Chase accounts #3644, #7244, #7122, and # 6879, that, in and about the months of June and July 2016, had aggregate beginning and ending balances of between approximately $288 and approximately $685, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate; and

    c.    That she then had no income other than financial aid, when ANDERSON well knew that she had income in June and July of 2016, in the amount of

approximately $3,618 and $3,618, respectively, from fraudulently obtaining and converting funds from the C.H.G. Estate.

32.　　It was further part of the scheme that in and about 2017, ANDERSON fraudulently obtained and converted approximately $44,973 from the C.H.G. Estate and ANDERSON and Coschemer A fraudulently obtained approximately $11,708 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

33.　　It was further part of the scheme that, on or about May 25, 2017, in order to fraudulently continue to receive Housing Assistance Payments, ANDERSON submitted to the Kendall Housing Authority a sworn Personal Declaration in which ANDERSON made false representations, including:

　　a.　　Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

　　b.　　That she did not "own any real estate," when ANDERSON well knew that she owned the Whirlaway residence;

　　c.　　That she then had no income, when ANDERSON well knew that she had income in June and July of 2017, the amount of approximately $5,427 and $3,618, respectively, from fraudulently obtaining and converting funds from the C.H.G. Estate; and

　　d.　　That she had no bank accounts and no funds on deposit when ANDERSON well knew that she had four bank accounts, namely Chase accounts #3644, #7244, #7122, and #6879, that, in and about the months of May and June 2017, had aggregate beginning and ending balances of between approximately $4,060 and approximately $2,402, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate.

15

34.     It was further part of the scheme that in and about 2018, ANDERSON fraudulently obtained and converted approximately $1,809 from the C.H.G. Estate and ANDERSON and Coschemer A fraudulently obtained approximately $8,342 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

35.     It was further part of the scheme that, on or about April 16, 2018, in order to fraudulently continue to receive Housing Assistance Payments, ANDERSON submitted to the Kendall Housing Authority a sworn Personal Declaration in which ANDERSON made false representations, including:

a.      Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabiting with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

b.      That she did not "own any real estate," when ANDERSON well knew that she owned the Whirlaway residence; and

c.      That she had no bank accounts and no funds on deposit when ANDERSON well knew that she had two bank accounts, namely Chase accounts #7244 and #6879, that, in and about the months of April and May 2018, had aggregate beginning and ending balances of between approximately $1,337 and approximately $2,216, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate.

<u>ANDERSON Files a Fraudulent Bankruptcy Case</u>

36.     It was further part of the scheme that, on or about March 14, 2019, after appearing in the Circuit Court of Cook County at a status hearing on the *Estate of C.H.G.*, ANDERSON met with a bankruptcy attorney for the purpose of filing a Chapter 7 bankruptcy case and, in the course

of providing information for the bankruptcy attorney's use in preparing Schedules and a Statement of Financial Affairs, ANDERSON provided materially false information and omitted to disclose material information which caused the filing of fraudulent Schedules and a fraudulent Statement of Financial Affairs, as further described in paragraphs 38 and 39 below.

37.    It was further part of the scheme that, on or about May 21, 2019, one day after she filed a *pro se* response to the Citation to Discover Assets & Information in the *Estate of C. H.G.*, ANDERSON signed under penalty of perjury and caused to be filed a petition under Title 11 of the United States Code initiating a Chapter 7 bankruptcy case, *In re Shirley J. Anderson*, 19-14562, in the United States Bankruptcy Court for the Northern District of Illinois (the "*Anderson Bankruptcy Case*").

38.    It was further part of the scheme that, on or about May 21, 2019, ANDERSON signed under penalty of perjury and caused to be filed Schedules in the *Anderson* Bankruptcy Case that were fraudulent in that ANDERSON attempted to and did make material false statements and conceal material facts from her creditors and the Chapter 7 Trustee, including:

      a.    in response to question 1 of Schedule A/B, ANDERSON falsely represented that she did not "own or have any legal or equitable interest in any residence," when in fact, she knew that she owned and had an interest in the Whirlaway residence;

      b.    in response to question 17 of Schedule A/B, ANDERSON falsely represented that she had a single Chase Bank checking account, when, in fact, she knew that, in addition being a sole account holder of Chase account #6879, she was a joint account holder of Chase account #7244 with Coschemer A from which payments were made relating to the concealed Whirlaway residence;

      c.    in Schedule E/F, ANDERSON falsely represented that she had total unsecured debt of only approximately $23,669, when she knew that she had

17

intentionally understated her unsecured debt by omitting to disclose the approximately $797,563 unsecured claim of the C.H.G. Estate and Victim A;

d.  in Schedule E/F, ANDERSON intentionally omitted to disclose the C.H.G. Estate and Victim A as unsecured creditors; and

e.  in part 2 of Schedule I, ANDERSON falsely represented that she did not receive any regular contributions towards her expenses by an unmarried partner, when, in fact, she knew that she received regular contributions towards her expenses from Coschemer A.

39.  It was further part of the scheme that, on or about May 21, 2019, ANDERSON signed under penalty of perjury and caused to be filed a Statement of Affairs in the *Anderson* Bankruptcy Case that was fraudulent in that ANDERSON attempted to and did make material false statements, and conceal material facts from her creditors and the Chapter 7 Trustee, including:

a.  in response to question 5, which required disclosure of any other income in the prior two calendar years;

i.  with respect to the calendar year 2017, ANDERSON falsely represented that she received no income from any source other than employment; when, in fact, ANDERSON received approximately $44,973 in income from fraudulently obtaining and converting money from the C.H.G. Estate; and

ii.  with respect to the calendar year 2018, ANDERSON falsely represented that she received no income from any source other than employment; when, in fact, ANDERSON received approximately $1,809 in income from fraudulently obtaining and converting money from the C.H.G. Estate; and

b.  in response to question 9, defendant intentionally omitted to disclose the *Estate of C.H.G.,* as a lawsuit and court action in which she was a party.

40.  It was further part of the scheme that, ANDERSON did not disclose the C.H.G. Estate and Victim A as a creditor for purposes of depriving the C.H.G. Estate and Victim A of notice of and the opportunity to timely participate in the Anderson Bankruptcy Case in order to

prevent the C.H.G. Estate and Victim A from objecting to defendant's discharge and providing information to the Chapter 7 Trustee and creditors about ANDERSON fraudulently obtaining and converting money from the C.H.G. Estate, and did not disclose the Whirlaway residence in order to prevent it from being included as property of her bankruptcy estate.

Anderson Continues to Fraudulently Obtain Housing Assistance Payments while in Bankruptcy

41. It was further part of the scheme that in and about 2019, ANDERSON and Coschemer A fraudulently obtained approximately $9,595 in Housing Assistance Payments, which funds were among the funds in Chase account #7244 that Coschemer A used to make the payments on the Whirlaway residence mortgage loan.

42. It was further part of the scheme that, on or about May 31, 2019, in order to fraudulently continue to receive Housing Assistance Payments, ANDERSON submitted to the Kendall Housing Authority a sworn Personal Declaration in which ANDERSON made false representations, including:

    a.    Providing a list of the members of her household who were living at the Whirlaway residence that did not include Coschemer A, when ANDERSON well knew that she was the domestic partner of and cohabitating with Coschemer A and that Coschemer A resided at the Whirlaway residence with her;

    b.    That she did not "own any real estate," when ANDERSON well knew that she owned the Whirlaway residence; and

    c.    That she had no bank accounts and no funds on deposit when ANDERSON well knew that she had two bank accounts, namely Chase accounts #7244 and #6879, that, in and about the months of May and June of 2019, had aggregate beginning and ending balances of between approximately $1,914 and approximately $753, respectively; and that she had used these undisclosed accounts to engage in transactions with thousands of dollars that she had fraudulently obtained and converted from the C.H.G. Estate.

43.     It was further part of the scheme that, from on or about September 13, 2013, though and including on or about February 3, 2020, ANDERSON converted approximately $86,677 in Housing Assistance Payments.

44.     It was further part of the scheme that ANDERSON did misrepresent, conceal and hide, and caused to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purposes of those acts.

45.     On or about May 21, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a petition under Title 11 of the United States Code initiating a Chapter 7 bankruptcy case, *In re Shirley J. Anderson*, 19-14562, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Section 157(1).

**COUNT TWO**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count One are re-alleged here.

2.      Beginning in or around September 2011, and continuing until in or around February 2020, at Carpentersville, Montgomery, and Chicago, and elsewhere in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, together with Coschemer A, devised and intended to devise a scheme to defraud and for the purpose of executing and concealing the scheme and attempting to do so, filed and caused to be filed a document in a bankruptcy case under Title 11.

3.      The allegations of paragraphs 3 through 44 of Count One are re-alleged here.

4.      On or about May 21, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a document, namely a Statement of Financial Affairs and Schedules, in a proceeding under Title 11, namely, a Chapter 7 bankruptcy case, *In re Shirley J. Anderson*, 19-14562;

In violation of Title 18, United States Code, Section 157(2).

21

## COUNT THREE

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of subparagraphs 1.a., and 1.p. of Count One are re-alleged here.

2.      From on or about May 21, 2019, and continuing through at least on or about around May 20, 2024, at Chicago, in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, knowingly and fraudulently concealed from a trustee charged with the control and custody of property and, in connection with a case under Title 11, namely, *In re Shirley J. Anderson*, 19-14562, from creditors, property belonging to the estate of a debtor, namely, SHIRLEY J. ANDERSON, to wit, 3150 Whirlaway Lane, Montgomery, Illinois;

In violation of Title 18, United States Code, Section 152(1).

## COUNT FOUR

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.     The allegations of subparagraphs 1.a., 1.r., and 1.s. of Count One are re-alleged here.

2.     On or about May 21, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

SHIRLEY J. ANDERSON,

defendant herein, knowingly and fraudulently made and caused to be made a false statement under penalty of perjury in relation to a case under Title 11, namely, a Chapter 7 bankruptcy case, *In re Shirley J. Anderson*, 19-14562, in that:

   a.     in response to question 1 of Schedule A/B, ANDERSON falsely represented that she did not "own or have any legal or equitable interest in any residence", when in fact, she knew that she owned and had an interest in the Whirlaway residence;

   b.     in response to question 17 of Schedule A/B, ANDERSON falsely represented that she had a single Chase Bank checking account, when, in fact, she knew that, in addition to being a sole account holder of Chase account #6879, she was a joint account holder of Chase account #7244 with Coschemer A from which payments were made to purchase the concealed Whirlaway residence;

   c.     in Schedule E/F, ANDERSON falsely represented that she had total unsecured debt of only approximately $23,669, when she knew that she had intentionally understated her unsecured debt by omitting to disclose the approximately $797,563 unsecured claim of the C.H.G. Estate and Victim A;

   d.     in Schedule E/F, ANDERSON intentionally omitted to disclose the C.H.G Estate and Victim A as unsecured creditors;

   e.     in part 2 of Schedule I, ANDERSON falsely represented that she did not receive any regular contributions towards her expenses by an unmarried partner, when, in fact, she knew that she received regular contributions

towards her expenses from Coshemer A;

f.    in response to question 5 of the Statement of Financial Affairs, which required disclosure of any other income in the prior two calendar years;

    i.    with respect to the calendar year 2017, ANDERSON falsely represented that she received no income from any source other than employment; when, in fact, ANDERSON received approximately $44,973 in income from fraudulently obtaining and converting money from the C.H.G. Estate; and

    ii.    with respect to the calendar year 2018,  ANDERSON falsely represented that she received no income from any source other than employment; when, in fact, ANDERSON received approximately $1,809 in income from from fraudulently obtaining and converting money from the C.H.G. Estate; and

g.    in response to question 9 of the Statement of Financial Affairs, defendant intentionally omitted disclosure of the *Estate of C.H.G.,* as a lawsuit and court action in which she was a party.

In violation of Title 18, United States Code, Section 152(3).

## <u>COUNT FIVE</u>

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.     The allegations of subparagraphs 1.a., 1.b., and 1.e. through 1.j., and paragraph 42 of Count One are re-alleged here.

2.     On or about July 5, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

25

## COUNT SIX

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count Five are re-alleged here.

2.      On or about August 5, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received housing assistance benefits check to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

**COUNT SEVEN**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.     The allegations of paragraph 1 of Count Five are re-alleged here.

2.     On or about September 4, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received  housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

## **COUNT EIGHT**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count Five are re-alleged here.

2.      On or about October 3, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

28

## COUNT NINE

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.     The allegations of paragraph 1 of Count Five are re-alleged here.

2.     On or about November 5, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

29

## COUNT TEN

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count Five are re-alleged here.

2.      On or about December 3, 2019, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received  housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

## **COUNT ELEVEN**

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count Five are re-alleged here.

2.      On or about January 3, 2020, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received  housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

31

## COUNT TWELVE

The SPECIAL NOVEMBER 2023 GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count Five are re-alleged here.

2.      On or about February 3, 2020, in Kendall County, in the Northern District of Illinois, Eastern Division, and elsewhere,

SHIRLEY J. ANDERSON,

defendant herein, did knowingly steal, purloin, and convert, and caused to be stolen, purloined, and converted, to her own use money of the United States Department of Housing and Urban Development in the amount of $1,170, in that the defendant received housing assistance benefits to which she was not entitled.

In violation of Title 18, United States Code, Section 641.

## **FORFEITURE ALLEGATION**

The SPECIAL NOVEMBER 2023 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 152(1) and (3), as alleged in this Indictment, defendant shall forfeit to the United States of America any and all right, title, and interest each may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C).

2.      The property to be forfeited includes, but is not limited to,

The following described real estate:

Lot 444 in BLACKBERRY CROSSING WEST-UNIT 4, being a subdivision of part of the East half of Section 3, Township 37 North, Range 7 East of the Third Principal Meridian, according to the plat thereof recorded September 9, 2005 as Document 200500027465, in Kendall County, Illinois.

Commonly known as 3150 Whirlaway Lane, Montgomery, Illinois.
Permanent Index Number 02-03-276-005

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be

divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
ACTING UNITED STATES ATTORNEY